**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH**

DAMON HOOKS,

Plaintiff,

v.

VA PITTSBURGH HEALTHCARE SYSTEM,

Defendant.

Civil Action No. 2: 21-cv-0321

United States Magistrate Judge
Cynthia Reed Eddy

**MEMORANDUM OPINION[1]**

**CYNTHIA REED EDDY, United States Magistrate Judge**

Pending before the Court is Defendant's motion for summary judgment. (ECF No. 37). For the reasons that follow, the motion will be granted in part and denied in part.

## I. Procedural History

Plaintiff, Damon Hooks, is a Black male formerly employed by the Veterans Administration Health Care System in Pittsburgh ("VAPHS"). Complaint, ¶¶ 1 – 3 (ECF No. 1). On February 5, 2020, VAPHS terminated Plaintiff's employment. Before filing this action, Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Office ("EEO"). Upon receipt of the EEO's final decision denying those charges, Hooks commenced this action under Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e ("Title VII"), and 42 U.S.C. § 1981. (ECF No. 1).

---

[1] This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343. The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, including trial and entry of judgment. *See* ECF Nos. 12 and 13.

Plaintiff filed a four-count Complaint. (ECF No. 1). In Count I, he brings a claim of race discrimination under Title VII . In Count II, he brings a claim of hostile work environment, race discrimination, and retaliation under 42 U.S.C. § 1981. In Count III, he brings a claim of retaliation under Title VII, and in Count VI, he brings a hostile work environment claim on the basis of race under Title VII and 42 U.SC. § 1981.[2]

After close of discovery, VAPHS filed this Motion for Summary Judgment.[3] (ECF No. 37). Plaintiff filed a timely Response and Brief in opposition (ECF Nos. 45 and 46), to which VAPHS filed a timely Reply (ECF No. 55), to which Plaintiff filed a timely Sur-Reply. (ECF No. 60). The motion is fully briefed and the factual record thoroughly developed. (ECF Nos. 39. 40, 47, 48, 49, 50, 56, and 57). After carefully considering the motion, the material in support of and in opposition to the motion, the memoranda of the parties, the relevant case law, and the record as a whole, the motion will be granted in part and denied in part.

---

2 In response to VAPHS's motion for summary judgment, Plaintiff clarifies that he no longer is pursuing his claims for hostile work environment and his claims brought under 42 U.S.C. § 1981. (Pl's Br. at p. 17 ). Thus, the claims in Counts II and IV of the Complaint will be dismissed.

3 The provision of Title VII applicable to federal employment provides that the only appropriate defendant in an employment discrimination action against the federal government or any of its instrumentalities is "the head of the department, agency or unit, as appropriate." 42 U.S.C. § 2000e-16(c). Thus, the Secretary of the Department of Veterans Affairs is the proper defendant in this case. The Court notes, however, that Plaintiff has not moved to substitute the currently named defendant. As a result, the Court has not changed the caption and will continue to refer to defendant as "VA Pittsburgh Healthcare System" or "VAPHS".

## II. Factual Background[4]

### A. Plaintiff's Employment Background with the VA

Plaintiff began his career with the VA in 2011 as a Supervisor and Medical Supply Technician at the Baltimore VA facility. (Plaintiff's Statement of Material Facts ("PSMF"), ¶ 62) (ECF No. 47). In January 2013, Plaintiff was named Assistant Chief of Sterile Processing Services ("SPS") for the Pittsburgh VA and reported to Denise Trasoline, the Chief of SPS.[5] (Defendant's Statement of Material Fact ("DSMF"), ¶ 9). (ECF No. 39). Plaintiff's Annual Performance Appraisals all reflected that he was "fully successful" and no significant deficiencies were noted. (PSMF, ¶¶ 50-56.) The 2019 Competency Review conducted by Rebecca Gomory found Plaintiff to be fully competent in all areas. (*Id.*, ¶ 56).

In December 2017, Plaintiff reported he had been sexually harassed by Trasoline. (DSMF, ¶ 9). An internal investigation was conducted by the VA Office of Resolution Management. Trasoline left her employment with VAPHS in approximately January 2018 before the internal investigation was completed. (PSMF, ¶¶ 58, 65). After Trasoline's departure, Plaintiff was temporary assigned to Acting Chief of the SPS Department. (*Id.*, ¶ 66). Plaintiff served in this role from January 2018 until February 2019 when Rebecca Gomory, a Caucasian female, was selected and hired as the new SPS Chief. (DSMF, ¶ 13). Plaintiff applied twice for

---

4 In ruling on a motion for summary judgment, the Court must draw all inferences from the facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 255 (1986).

5 There is an inconsistency in the summary judgment record on the date Plaintiff became the Assistant Chief of SPS. Plaintiff testified that he was promoted to Assistant Chief of SPS in January 2013. (PSMF, ¶ 63.) Defendant states Plaintiff became the Assistant Chief in April 2013. (DSMS, ¶ 9). This is not a material dispute that affects the resolution of this motion.

the SPS Chief position; he was denied the position on both of occasions. (PSMF, ¶¶ 66, 68). Upon the hiring of Gomory, Plaintiff was returned to the position of Assistant Chief of SPS.

On February 5, 2018, Plaintiff filed an EEO complaint at Case No. 200H-0646-2018101503 alleging: (1) hostile work environment based on sexual harassment by Trasoline; (2) hostile work environment based on race and sex (non-sexual); and (3) retaliation (alleging that his non-selection for SPS chief was in retaliation for his EEO complaint of racial discrimination and sexual harassment). (DSMF, ¶ ¶ 10, 11; PSMF, ¶ 57).

On November 19, 2019, the Final Agency Decision in Case No. 200H-0646-2018101503 was issued. (ECF No. 50-13). The EEO concluded that (1) Plaintiff had proven by a preponderance of the evidence that he had been sexually harassed by Trasoline; (2) Plaintiff had failed to prove that he was subjected to discriminatory harassment or a hostile work environment based on his race or sex; and (3) that Plaintiff had failed to prove that he was retaliated against when he was not selected for the SPS Chief position. (DSMF, ¶ 11; PSMF, ¶ 59). As relief, the EEO found that VAPHS was liable for compensatory damages. The decision on the specific amount of damages was deferred pending a supplemental investigation report on the damages issue. (ECF No. 50-13, p. 23). In addition to the award of compensatory damages, the EEO ordered PAVHS to post for 60 consecutive days a Notice to Employees regarding unlawful discrimination in violation of Title VII. (*Id.*).[6] Final damages were issued in the Spring of 2020. (Complaint, at ¶ 13).

[6] The summary judgment evidence of record indicates the Notice to Employees was signed by Donald E. Koenig and posted on November 15, 2019. (ECF No. 50-13 at p. 32).

B. The Mock Surveys and Findings

The Joint Commission on Accreditation of HealthCare Organizations ("JCAHO") provides accreditation and certification services to healthcare organizations including the VA. (DSMF, ¶ 5). JCAHO generally visits once every three years to survey a healthcare system and provide accreditation. (*Id.*, ¶ 6). To prepare for the 2020 JCAHO review, VAPHS arranged for "mock joint commission surveys" as part of the entire facility survey readiness plan. Three such surveys were conducted in 2019.

The first survey, conducted on June 11, 2019 by Glenn Krasker of Critical Management Solutions, revealed that SPS staff were not following proper sterile processing protocols to sterilize instruments for surgery. (*Id.*, ¶ 25). The surveyor concluded that had this mock survey been an actual JCAHO survey, these findings would have resulted in a "J" finding, meaning "imminent jeopardy," resulting in a complete loss of the Joint Commission accreditation. (*Id.*, ¶ 26). As a result of these findings, VAPHS coordinated with the VA Butler Health Care System to send all instruments for sterile processing to the VA Butler SPS's Department until new ultrasonic machines could be installed. (*Id.*, ¶ 27).

The second mock survey was conducted from June 18 to June 21, 2019, by Missy Halvorsen and Fiona Adams of the Mihalik Group. (*Id.*, ¶ 28).[7] This survey found 68 violations of regulations, policies, and manufacturer instructions. (*Id.*). Following these findings, Plaintiff was required to create action plans that addressed and corrected the deficiencies.

[7] Nicholas Haller testified in his deposition that the second survey was conducted by members of the Veteran Integrated Service Network ("VISN"). The VISN is outside of the Pittsburgh area, but is a part of the VA. (Haller Depo: 38: 9-16).

The third mock survey occurred from September 25-27, 2019, and resulted in similar findings to the first two mock surveys. (*Id*., ¶ 29). This survey reported that Plaintiff had failed to perform SPS staff competencies[8] and had falsely documented on staff member's competency forms that he observed them in practice, listened to them verbalize the process, and had them demonstrate the procedure. According to VAPHS, Plaintiff's failure to ensure that SPS techs complied with the manufacturer's instructions for sterilization resulted in his overall failure to ensure that SPS complied with sterilization protocols.

On October 9, 2019, Nicholas Haller, Plaintiff's first-level supervisor, and detailed as the Interim Associate Director Patient Care Services and Nurse Executive,[9] informed both Plaintiff and Rebecca Gomory, the Chief of SPS, that they were being placed on temporary detail while a fact-finding investigation was completed. (Pl's Depo. at 76: 20; DSMF, ¶ 31; ECF No. 50-13 at 39).

C. <u>The Fact-Finding Investigation and Subsequent Employment Termination</u>

On November 25, 2019, approximately one week after the issuance of the Final Agency Decision on Plaintiff's sexual harassment complaint, Haller interviewed Plaintiff as part of his fact-finding investigation. On December 6, 2019, Plaintiff filed a formal EEO Complaint at Case No. 20H-0646-2020100231 stating he had been discriminated against based on "race (Black) and reprisal (EEO activity) when on October 15, 2019, he was placed on a management-

---

[8] A competency seeks to ensure that SPS staff are completing their tasks properly. Plaintiff was required to observe and verify the competency of his staff, at least annually, on critical and semi-critical reusable medical equipment. (DSMF, ¶ 30). Plaintiff contends that he, the Chief of SPS, and David Pust (a Caucasian male, who was an administrator officer that had an educational role in the SPS), all had responsibilities for ensuring completion of competencies. (PSMF, ¶¶ 30, 84, 85).

[9] Haller held this position from November 2018 to January 2020. (DMSF, ¶ 14).

directed detail." (Supplemental Written Affidavit of Nicholas J. Haller, ¶ 1) (ECF 49-9). *See also* Investigative Report, ECF No. 50-13 at p. 39). The complaint was accepted for investigation on January 30, 2020. The Complaint was revised and amended on February 20, 2020. (*Id.*)

According to VAPHS, the internal fact-finding investigation confirmed that Plaintiff had falsely documented on each staff member's competency form that he had observed them in practice, listened to them verbalize the process, and had them demonstrate the procedure. (DSMF, ¶ 35). Plaintiff also failed to create and complete action plans that addressed and corrected the deficiencies identified during the second mock survey. (*Id.*, ¶ 36). Based on his investigation, Haller recommended that the employment of both Plaintiff and Rebecca Gomory be terminated. (*Id.*, ¶ 37).

On January 5, 2020, Brenda Shaffer became the permanent Associate Director of Patient Care Services with supervisory oversight of SPS. (*Id.*, ¶ 17). She reviewed Haller's fact-finding materials and agreed that it supported removal for both Plaintiff and Gomory. (*Id.*, ¶ 40). On January 14, 2020, Shaffer issued Plaintiff a Proposed Removal, which resulted in Plaintiff being suspended. (*Id.*, ¶ 41; *see also* ECF No. 50-13 at p. 39).

Executive Director Koenig reviewed the Proposed Removal and Plaintiff's response.[10] On February 5, 2020, Koenig terminated Plaintiff's employment citing "ineffective oversight," "lack of candor," and neglect of duties." (Decision on Removal, ECF No. 50-13, at pp. 45-48).

---

[10] VAPHS asserts that Koeneg reviewed "all supporting evidence." (DSMF, ¶ 42). Plaintiff responds that Koenig reviewed "some documents from Plaintiff, but did not review all supporting evidence." (PSMF, ¶ 42).

David Pust, a SPS educator, who Plaintiff identified as a similarly situated employee, was given only a one-day suspension for not completing competencies appropriately and was then able to return to work. (PSMF, ¶¶ 86, 131).

Plaintiff testified in his deposition that he has been told that two weeks after his employment was terminated, Gomory's employment was also terminated. (Pl's Depo. 69: 7-8)(ECF No. 48-1 at p. 69). According to Plaintiff, Gomory "was just like a casualty of war. They had to terminate her because they terminated me to cover it up." (*Id*. at Lines 17-20).

Plaintiff maintains that he was doing his job to the best of his ability and had always been told that he was performing well, as reflected in his performance evaluations. He contends that after he filed his first EEO complaint, "things all started to snowball, and that is when -- everybody turned their backs and just started acting different." (Pl's Depo. at 67:5-9 (ECF No. 48-1 at p. 67; PSMF, ¶ 91). VAPHS contends that Plaintiff's employment was terminated to ensure safety in the delivery of services to veterans who receive medical care across the Pittsburgh VA's hospitals and community-based outpatient clinics.

**III. Standard of Review**

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, "summary

judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 250.

On a motion for summary judgment, the facts and the inferences to be drawn from it should be viewed in the light most favorable to the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587-88 (1986); *Hudson v. Proctor & Gamble Paper Prod. Corp.,* 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co*., 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 247-48. An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with respect to that issue. *See id*. "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'." *Matsushita,* 475 U.S. at 587; *Huston*, 568 F.3d at 104.

With this standard in mind, the Court now turns to the motion for summary judgment.

## IV. Analysis

Title VII's antidiscrimination provision makes it an unlawful employment practice for an employer in the private sector "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . . " *Komis v. Sec'y of United States Dep't of Labor*, 918 F.3d 289, 292 (3d Cir. 2019) (quoting 42 U.S.C. § 2000e-2(a)(1)). Title VII also includes an anti-retaliation provision which prohibits a private sector

employer from "discriminating against any of his employees or applicants for employment ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id*. at 293 (quoting 42 U.S.C. § 2000e-3(a)). Section 717 of Title VII, as amended, 42 U.S.C. § 2000e-16, provides "federal employees with the full rights available in the courts as are granted to individuals in the private sector under Title VII." *Id*. at 294 (quoting *Loeffler v. Frank*, 486 U.S. 549, 559 (1988)).

Cases in which there is no direct evidence of discrimination or retaliation are analyzed under the three-step burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[11] As noted in *Castleberry v. STI Grp*., 863 F.3d 259 (3d Cir. 2017):

> Under that framework, a plaintiff must first establish the requisite elements of this claim (called the prima facie elements); if so, the "burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action, and then the plaintiff bears the burden of establishing that the employer's stated reason for the adverse action was an excuse, or pretext, for why the action was actually taken.

*Id*. at 263 (quoting *McDonnell Douglas Corp*., 411 U.S. at 802-04). The plaintiff must point to evidence that: "1) casts sufficient doubt upon each of the legitimate reasons proferred by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication;" or 2) permits the factfinder to reasonably conclude "that discrimination was more likely than not a

[11] A plaintiff claiming a Title VII violation may also proceed using the mixed-motive approach, as defined by the Supreme Court of the United States in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). In Title VII cases, the mixed motive approach applies when a plaintiff contends that an adverse employment decision was made for both legitimate and discriminatory reasons. *Makky v. Chertoff*, 541 F.3d 205, 213 (3 Cir. 2008). The parties agree that the three-step framework of *McDonnell Douglas* applies to the Court's analysis of Plaintiff's race-based discrimination and retaliation claims.

motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994).

**a. Discrimination**

First, the *McDonnell Douglas* approach requires a plaintiff to establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. To establish a *prima facie* case of race discrimination, Plaintiff must show: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that circumstances give rise to an inference of unlawful race discrimination. *Mandel v. M & Q Packaging Corp.,* 706 F.2d 157, 169 (3d Cir. 2013). In its motion for summary judgment, VAPHS states that for purpose of this motion only, it "assumes Plaintiff can establish a *prima facie* case of discrimination." Br. at 9 (ECF No. 38). Because Plaintiff has established the *prima facie* elements of his race discrimination case, the Court moves on to the second step of the *McDonnell Douglas* test.

In the second step of the *McDonnell Douglas* test, the burden shifts to VAPHS to articulate a "legitimate, nondiscriminatory reason" for termination. *McDonnell Douglas*, 411 U.S. at 802. VAPHS has presented evidence that Plaintiff's employment was terminated based on a fact-finding investigation, conducted as a result of findings by three separate evaluation teams that SPS staff were not following proper sterilization protocols.[12] The investigation

[12] Plaintiff does not dispute the findings and conclusions of the mock surveys; he contends, however, that he should not have been held responsible for the failures in the SPS Department as he was not properly trained. The Court of Appeals for the Third Circuit, however, has consistently held that an employer's conclusions based on wrong or mistaken perceptions or information cannot support a conclusion that the decision was actually the product of discriminatory animus. *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (finding "federal courts are not arbitral boards ruling on the strength of 'cause' for discharge" (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (8th Cir. 1996))); *Billet*

revealed that Plaintiff: (a) failed in his supervisory oversight; (b) lacked candor in carrying out his responsibilities for staff competencies; and (c) neglected his duties to develop and carry out plans to correct deficiencies identified by the VISN4 evaluators. The Court finds that VAPHS has met this step of the *McDonnell Douglas* test. As a result, the Court moves on to the third step of the *McDonnell Douglas* analysis.

In step three, the burden shifts back to Plaintiff to show that VAPHS's "stated reason for [the adverse employment action] was in fact pretext." *McDonnell Douglas*, 411 U.S. at 803. Plaintiff must provide evidence that:

> 1) casts sufficient doubt upon each of the legitimate reasons proferred by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.

*Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). The Court finds that Plaintiff has failed to meet this step of the *McDonnell Douglas* test.

While Plaintiff has attempted to undermine VAPHS's stated reasons for the termination of his employment, he has adduced no evidence from which a fact finder could conclude that VAPHS's decision to terminate his employment was motivated by a discriminatory racial animus. *See Rouse v. II-VI, Inc.*, No. 06-566, 2008 WL 2914796, at *18 (W.D.Pa. July 24, 2008), *aff'd*, 2009 WL 1337144 (3d Cir. May 14, 2009) (finding that plaintiff's testimony expressing a subjective conclusion that discrimination has occurred, without more, is insufficient to proceed to trial). For example, while Plaintiff presents evidence of his favorable performance and competency evaluations, the undisputed summary judgment evidence reflects that Plaintiff's

---

*v. CIGNA Corp.*, 940 F.2d 812, 825-28 (3d Cir. 1991) (holding that a plaintiff may not defeat summary judgment merely by questioning the judgment behind an employer's decision, absent other evidence of impermissible motive).

employment was terminated not for overall deficient performance; rather, the decision was made based on failures discovered during the mock surveys which required immediate implementation of actions to mitigate widespread safety risks. Additionally, not only were these failures confirmed during the fact-finding investigation, but it was discovered during the fact-finding investigation that Plaintiff had falsified clinical competency documentation. Based on the fact-finding investigation, the employment of Plaintiff, a Black male, and his direct supervisor, a Caucasian female, were terminated. That Plaintiff had not received negative performance evaluations prior to his termination does not cast sufficient doubt on VAPHS's explanation for its termination decision.

Plaintiff also relies on the testimony of Karen Williams, a union representative, who testified during her deposition that she believed Haller's fact-finding interviews were leading and suggestive of answers and that "Haller's investigation fell outside the norm." Pl's Br. at 9. He also relies on the deposition testimony of Brenda Shaffer who testified that she did not question Haller on how he pursued his fact-finding and that she "had no reason to do that," PSMF, ¶¶ 125 – 128, and the deposition testimony of Donald Koenig who testified that he received a packet that HR prepared and that he did not rely on anything outside of what was in the HR prepared packet and items submitted from Plaintiff.

Again, Plaintiff's evidence and arguments with the procedures taken to investigate his conduct or what would have been a better investigation, or the final decision process, do not amount to evidence from which a reasonable fact finder could find that the VAPHS acted for discriminatory reasons. *See Fuentes*, 32 F.3d at 765 (stating that "To discredit the employer's proffered reasons, however, the plaintiff cannot simply show that the employer's decision was

wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.").

As to the discrepancy between the disciplinary action taken against Plaintiff and David Pust, the undisputed summary judgment evidence reflects that Plaintiff was a supervisor while David Pust had no supervisory responsibilities. Pust was also a bargaining employee where as Plaintiff was not. (ECF No. 50-13, p. 41).

Thus, based on the summary judgment evidence of record, the Court finds that Plaintiff's Title VII race discrimination claim fails under the *McDonnell Douglas* framework as Plaintiff has not set forth sufficient evidence to establish pretext. Summary judgment will be granted to VAPHS on this claim.

**b. Retaliation**

Plaintiff also claims that VAPHS terminated his employment in retaliation for his filing of an EEO Complaint in which he reported that he had been sexually harassed by Trasoline. Specifically, Plaintiff contends the internal fact-finding investigation which led to his termination began about one week after he received a favorable ruling from the EEO on the claim, and he was terminated from his position three months after that final favorable decision. As with Plaintiff's discrimination claim, the *McDonnel Donnell* burden-shifting framework applies.

First, Plaintiff must first establish a *prima facie* case of retaliation. *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006). To do so, he must "tender evidence that: '(1) he engaged in a activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse action'." *Kengerski v. Harper*, 6 F.4th 531, 536 (3d Cir. 2021)

(quoting *Moore*, 461 F.3d at 340-41) (quoting *Nelson v. Upsala Coll*., 51 F.3d 383, 386 (3d Cir. 1995)).

VAPHS again, for purpose of this motion only, "assumes Plaintiff can establish a *prima facie* case of retaliation." Br. at 14 (ECF No. 38). Because Plaintiff has established the *prima facie* elements of his retaliation claim, the Court moves to the second step of the *McDonnell Douglas* test. As discussed above, VAPHS has met its burden of articulating legitimate reasons for its decision to terminate Plaintiff's employment.

Thus, the burden shifts back to Plaintiff to adduce any evidence that supports his claim that VAPHS's articulated legitimate reason for his termination was pretextual. To establish pretext, the plaintiff must present sufficient evidence from which a reasonable jury could either: (1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not the real reason for the employer's action. *Fuentes,* 32 F.3d at 764. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (quoting *Carson v. Bethlehem Steel Corp*., 82 F.3d 157, 159 (7th Cir. 1996)).

VAPHS argues that Plaintiff's employment was terminated because the safety and health of Veterans was jeopardized as a result of Plaintiff's deficient job performance. Plaintiff counters that VAPHS's stated reasons for his firing is pretextual. He argues that the decision to terminate his employment was in retaliation for his protected complaint of sexual harassment.

Plaintiff testified during his deposition that in 2018 or 2019,[13] when Haller became Interim Associate Director, Haller said to him, "Well, you filed an EEO complaint against the prior chief. Are you going to do that again?" (Pl's Depo.: 46: 4-5) (ECF No. 48-1 at p. 44). Haller testified, however, that he knew nothing about Plaintiff's EEO complaint until October 21, 2019, when Plaintiff came to his office "requested a meeting . . . [a]nd in that conversation he stated that he had an EEO against Denise Trasoline for a hostile work environment . . . ." (Haller Depo. 15: 18-23) (ECF No. 48-4 at p. 13). Haller also testified that Plaintiff "had concerns about the stability of his job, and he stated that he believed that having an active EEO somehow prevented any possible disciplinary action against him while the EEO was active." (Haller Depo. 16: 1-5) (ECF No. 48-4 at p. 16). According to Haller, Plaintiff "apparently went right downstairs after that conversation and filed an EEO against me." (Haller Depo. 16: 16-18) (ECF No. 48-4 at p. 16).

Haller also testified that despite being Interim Associate Director, he was not aware that employees in his department were being interviewed or that an investigation about the EEO claim filed by Plaintiff against Trasoline was being conducted in the SPS department (Depo. 12: 1 – 12); he never saw the EEO Final Decision; he did not recall seeing the Notice to Employees; and he does not know where such a Notice would be posted.

Brenda Shaffer testified she was not made aware of Plaintiff's EEO complaint regarding his claims against Trasoline and that she did not see the Final Agency Decision. (Shaffer's Depo. 36: 1 – 9) (ECF No. 48-5 at p. 36). Accordingly to Plaintiff, he believes that Shaffer knew about the previous EEO complaint because she was Haller's boss and,

---

13 Haller testified that he was named Interim Associate Director in November 2018, after Trasoline left VAPHS.

> I don't know specifically. You know, it was when she took over that spot permanently. I mean, you could tell just her - - how she treated me. She treated me like I was nothing. So I mean, she came in the door and just treated me like I was nothing.
>
> You know, and when I got detail, she was – I would go by her in the morning – it was on the ninth floor – she would just laugh, smirk, and just shake her head. They put me in a room for four months with a computer and nothing to do. They wanted me to quit.

Pl's Depo. at pp. 46-47.

These are the types of contested issues that a jury would have to sort out at trial. When considering a motion for summary judgment, the Court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if they are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). The Court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. Rather, it must simply determine whether there is a genuine issue for trial.

The Court concludes that the summary judgment record includes facts from which a reasonable jury could conclude that the decision to terminate Plaintiff's employment was motivated by an unlawful retaliatory animus.[14] Of course, it is also reasonably possible that a jury would find that the termination of Plaintiff's employment resulted only from the unsatisfactory mock survey results and the determinations of the fact-finding investigation. Viewing these facts most favorable Plaintiff, the Court finds that there are genuine issues of material fact that may not be appropriately decided on a motion for summary judgment.

---

[14] While Shaffer recommended to Koenig that Plaintiff's employment be terminated, a jury could determine that Shaffer's determination was influenced by Haller, who in turn was motivated by unlawful retaliatory animus. Shaffer testified that during her first week as Associate Director, she met with Haller and had him "brief me on it, what the plan was to go forward with [Plaintiff]." Shaffer Depo. 21: 17-18 (ECF No. 48-5, at p. 21).

Because the Court finds that a reasonable jury could find that VAPHS unlawfully retaliated against Plaintiff for engaging in protected activity, VAPHS's motion for summary judgment on Plaintiff's Title VII claim will be denied.

## V. Conclusion

After carefully reviewing the undisputed summary judgment record and the arguments of the parties, the Court finds VAPHS is entitled to summary judgment on Plaintiff's Title VII race discrimination claim as Plaintiff has not set forth sufficient evidence to establish pretext.

That said, however, the Court is of the opinion that issues of material fact exist which prevent the grant of summary judgment in favor of VAPHS on Plaintiff's Title VII retaliation claim.

An appropriate Order follows.

Date: May 3, 2023

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: All Counsel of Record
(via ECF electronic notification)